ROSANNA CURRAN *et al. vs.* WILLIAM H. GREEN *et ux.*

The court will not willingly appoint as trustee a married woman or a *cestui que trust*, but this is no reason for the removal of such a person who is competent and has been appointed by a testator trustee of his testamentary trusts.

Testamentary annuities begin to run from the testator's death. The fact that the testator directed the conversion of his estate into money as a trust fund out of which the annuities are to be paid, will not when *no time is specified* for the annuities to begin prevent their beginning at the testator's death.

After testamentary annuities should end, the testator provided for a gift over of the "residue" of the trust fund from which they were payable.

*Held*, that the annuities should not abate because the income of the trust fund might be insufficient to pay the annuities and taxes.

BILL IN EQUITY for the removal of a trustee and for an injunction.

The last will of John Curran, duly proven before the Probate Court of Pawtucket, is as follows:

"In the name of God, Amen. I, John Curran of Pawtucket, in the county of Providence and State of Rhode Island, do hereby make and publish this as and for my last will and testament, in manner following, that is to say:

"I hereby appoint William F. Meagher of said Pawtucket, sole executor of this my last will and testament, and order him to erect a suitable monument over my grave at a cost not to exceed five hundred dollars, and to pay all of my just debts and expenses.

"I order and direct my said executor to sell my real estate and such of my personal property as my wife Rosanna Curran may not choose to keep, either at public auction or at private sale, to the best advantage, and after paying all of my debts and expenses I order him to transfer to my daughter Sarah Green, wife of William Green, all the residue of my estate of every kind and nature, and she, said Sarah Green, shall manage the same as follows: (I hereby declaring my confidence in her ability and honesty.)

"The said Sarah Green shall deposit the same with the rest of my estate in some savings bank in this State, and shall pay to my said wife Rosanna Curran the sum of fifteen dollars each and every month from my death out of the same during the term of my said wife's natural life, and at my said wife's decease shall pay all of her proper debts and general expenses. Said sum of fifteen dollars per month is for the support of my said wife, and in lieu of dower. It is my wish that my said wife reside with said Sarah during my said wife's life.

"My said daughter Sarah shall pay the sum of one dollar to my daughter Mary E. Dexter and her heirs, also one dollar to my daughter Eliza J. Jenks and her heirs.

"My said daughter shall semi-annually pay the sum of fifty dollars to my son James R. Curran during the term of his natural life, the same to be paid out of the said money.

"My said daughter shall also pay to my daughter Rosanna

Slocum the sum of fifty dollars, semi-annually, for the term. of ten years, when said payments shall cease.

"My said daughter shall also pay to my daughter Ellen Riley the sum of fifty dollars, semi-annually, until the expiration of a like term of ten years, after which said payments shall also cease.

"When my granddaughter Eva Riley the daughter of Timothy Riley and of my deceased daughter Annie, arrives at the age of twenty-one my said daughter Sarah Green shall pay over to said Eva the sum of fifty dollars, semi-annually, for the term of ten years, after which term said payments shall cease.

"My said daughter Sarah shall set aside in said savings bank as a separate account the sum of one hundred dollars, the income of which shall be used for the perpetual care of my burial lot.

"Should any of my aforementioned daughters to whom said sums are to be paid semi-annually, die before the expiration of said terms of ten years, then said payments are to cease.

"My said daughter Sarah Green shall be paid the sum of one thousand dollars for herself and her heirs when the day for dividends comes first next after my death.

"Should my said daughter Sarah die before all the sums aforesaid are paid, I hereby empower her to name her successor in writing to perform the duties in the premises mentioned, and should she die before said sums are paid, and does not designate her successor, then the probate court of Pawtucket may name one.

"Should said Sarah die before the payment of said sums and the expiration of said terms of ten years, and there be any of my estate left after paying said sums and the expiration of said terms of ten years, the residue of my estate shall go to my heirs at law and their heirs. But should said Sarah survive the payments and terms of Rosanna and Ellen, then the rest and residue of my estate shall go to said Sarah and her heirs subject to the payments to said Eva Riley and James H. Curran, and subject also to my strict orders and

.will that the said Sarah shall never permit any of her sisters or brother to suffer for want of necessaries.

"I hereby revoke any and all former wills·made by me, and publish and declare this and this only as and for my last will and testament.

"Witness my hand this 12th day of November, 1889.

JOHN CURRAN.

"Signed, published and declared by John Curran, as and for his last will and testament, in our presence, and we have in his presence and in presence of each other,, and at his request, hereunto set our names as witnesses.

JOHN H. MEAGHER,<br>WILLIAM A. FOLEY."

*June* 21, 1893. PER CURIAM. While the court would be reluctant to appoint a married woman or a *cestui que trust* as a trustee, it is a very different matter to remove a trustee from office on account of these disqualifications which do not absolutely render a person incapable of acting as a trustee. The respondent, Mrs. Green, was appointed trustee under the will of her father, John Curran, by the testator himself, because of the confidence he felt in her capacity and honesty. So far as appears she has done nothing to show that she is not competent to perform the duties of the trust or that the trust estate will not be safe in her hands. There is, therefore, no sufficient ground to warrant her removal from the trust, especially as she offers to furnish a satisfactory bond , to secure the faithful performance of the trust.

The motion to dissolve the injunction granted February 23, 1893, is granted, provided a satisfactory bond is filed by the respondents in accordance with their offer.

The case was then submitted to the court for instructions as to when the annuities of the will began to run.

*July* 26, 1893. PER CURIAM. We see no reason for holding that the annuities given in the will of John Curran, for the beginning of which no time was specified, did not begin from his death. The circumstance that the will directs a conversion of his real and personal estate into money and the

payment to his daughter as trustee of the fund thus created, out of which the annuities are to be paid, does not affect the principle that the will speaks from the death of the testator; and, consequently, that the annuities, if no time of beginning is specified, begin from the date of his death. The direction for conversion is merely subsidiary to, not constructive of, the trust. *Pell* v. *Mercer*, 14 R. I. 412, 432. Schouler's Executors and Administrators, § 479. The annuitants, other than Eva Riley, whose annuity does not begin till she arrives at the age of twenty-one years, are, therefore, entitled to payment from the death of the testator, with interest on such installments of their annuities as are in arrear from the dates when they respectively became payable.

We are also of the opinion that the annuities provided for are to be paid without abatement, and are not to abate because the income of the trust fund may be insufficient for their payment in full and the payment of taxes; the gift over to the testator's daughter, Sarah Green, or in case of her death to his heirs at law, being, not of the fund in its entirety, but only of the residue.